IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EARL E. SYDNER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 08-cv-737-MJR |
| ) | |
| ROBERT BURNS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff Earl E. Sydner, currently an inmate in the Hill Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief
>     may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such
>     relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

**FACTS ALLEGED**

On August 3, 2009, Sydner was a pretrial detainee in the Jackson County jail. While being moved from the courthouse, Sydner dropped his discovery on the sidewalk. Because of the waist cuff belt and shackles, Sydner had to stop walking in order to retrieve the discovery. Once he stopped walking, Defendant Marks told Sydner to keep moving. After Sydner said he had to pick up what he had dropped, Marks reported on his hand radio that fellow officers were needed in booking. Marks then grabbed Sydner by the neck of his shirt and proceeded to choke him. Marks then grabbed the back of the waist cuff belt and lifted Sydner, shoving him so that the chain to the ankle shackles over extended, causing deep lacerations and abrasions to Sydner's ankles.

Once in booking, Marks threw Sydner into a brick wall, then to the ground. Officers that responded to Marks's call were in the cell waiting. Defendant John Doe #2 pulled Sydner up off the floor and, together with Defendant "Charlie" Doe #4, carried Sydner by the chain of the shackles into a holding cell while Sydner remained compliant. Doe #2 then slammed Sydner's body face first into a wooden bench while Doe #4 pinned Sydner down by placing a knee into his back so that Marks and Doe #2 could punch and slap Sydner. After some time, Marks, Doe #2, and Doe #4 removed Sydner's restraints and left him in the holding cell.

The holding cell that Sydner had been placed in was known by other prisoners as the "Cold Room" due to the temperature of the air blown into the room while a prisoner was inside. During Sydner's stay, the cell had no running water and the toilet was non-functioning, filled with bodily waste causing a putrid smell in the cell. Sydner attempted to draw attention to his bleeding ankles, caused by the rough treatment while in the shackles, but his requests for medical attention were

denied. Defendant John Doe #5 came to the cell to check on Sydner, but ignored Sydner's requests for medical attention.

Doe #5 did eventually remove Sydner from the holding cell and placed him back in his assigned cellblock. The next day, August 4, Sydner submitted an inmate grievance complaining of the assault and denial of medical care. The request for medical care was not met until August 8, when an un-named officer took Sydner to the prison nurse. On the day of August 8, Sydner asked Defendant John Doe #6 for a copy of his grievance and to see the nurse again for his injuries. Doe #6 replied "I have somewhere you can wait" and returned Sydner to the Cold Room holding cell for three hours. Sydner was then placed in administrative segregation.

On August 9, 2009 Sydner asked Defendant "George" Doe #3 for a copy of his disciplinary report, but was denied. After four days in segregation, on August 12, Sydner asked Defendant Vaughn for his disciplinary report, and Vaughn replied that the prison did not need to give Sydner a disciplinary report for administrative segregation. After nine days in segregation, on August 17, Sydner asked the shift sergeant, who is not a named party, how long he would remain in segregation before a hearing; the sergeant told him that he would not continue to be held in segregation. The next day, August 18, Sydner was returned to general prison population after 10 days of segregation.

Sydner promptly filed a grievance concerning the assault, denial of medical treatment, and placement in segregation in retaliation for filing the first grievance. The grievance was returned to Sydner 14 days later, in which Vaughn denied the actions alleged. Sydner believes that the treatment he received is representative of the mistreatment of all inmates at the Jackson County jail, and that the mistreatment is endorsed by Defendants Lieutenant John Doe #1 and Burns.

For relief, Sydner requests that a declaratory judgment be issued stating the violation of his

rights, an injunction be issued arranging for proper training of officers in the Jackson County jail and abolishing the use of the Cold Room. Further, Sydner requests compensatory damages totaling $200,000, as well as punitive damages totaling $110,000.

**DISCUSSION**

In his "claims for relief" (Doc. 1-2 at pp. 11-12), Sydner sets forth his specific legal claims against each defendant. To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break these claims into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:   Excessive Force**

Sydner first claims that Defendants Marks, Doe #2, and Doe #4 used excessive force when moving him to booking and while in the holding cell. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison

guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Sydner specifically alleges that pulling him by the ankle shackles, which caused deep lacerations, and then beating him in the holding cell rise to the level of excessive force. In light of the standards set forth above, this claim of excessive force cannot be dismissed at this time.

**COUNT 2: Failure to Prevent Harm**

Next Sydner claims that in failing to prevent the sort of abuse used by officers, Defendants Burns and Doe #1, the sheriff and a lieutenant, caused the excessive use of force leading to the violation of his rights and that these defendants are equally as liable for his injuries due to their failure to intervene. The Seventh Circuit has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, and they stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F,2d 480, 491 (7th Cir. 1987).

However, there is a well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). As Chief Judge Easterbrook recently stated,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. *See Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

*Burks*, 555 F.3d at 595.

From the complaint, it is clear that neither Defendant Doe #1 nor Burns were present during the incident alleged in Count 1, and thus could not have immediately prevented the actions. Even where Burns and Doe #1 were later informed of the use of excessive force, *Burks* makes clear that they cannot then be held responsible for those actions. Thus, this claim against Defendants Burns and Doe #1 must be dismissed.

**COUNT 3:    Due Process**

Sydner's final claim is that by placing him in the Cold Room holding cell, failing to remove

him from that cell, and failing to provide him with medical care, Defendants Vaughn, Doe #3, Doe #5 and Doe#6 violated his due process rights.

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, confinement of pretrial detainees may not be punitive, because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, conditions of pretrial confinement must be "reasonably related to a legitimate governmental objective." *Id.* at 539. *See also Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995); *Brownell v. Figel*, 950 F.2d 1285 (7th Cir. 1991).

A detainee has no constitutional right to confinement in comfort. *See Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir.), *cert. denied*, 488 US 863 (1988) (detainee has no right to a pillow, new tennis shoes, or frequent laundry service). *Cf. Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir.1986). However, he does possess a right to adequate heat and shelter. *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir.1991), *cert. denied*, 503 U.S. 966 (1992). Sydner's contention that he was deliberately confined to a cold cell is a sufficient allegation of inadequate heat and shelter. In addition,

> [a] state official violates the due process rights of a pretrial detainee when she acts with deliberate indifference toward the detainee's serious medical needs. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995); *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991); *Salazar v. City of Chicago*, 940 F.2d 233, 239 (7th Cir. 1991). The Seventh Circuit has observed that "deliberate indifference" is simply a synonym for intentional or reckless conduct, and that "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. *Brownell*, 950 F.2d at 1290. In this sense, the due process standard is analogous to that utilized in the

> Eighth Amendment context, where prison officials may be found liable for disregarding a substantial risk to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In both cases, the relevant inquiry is whether the official actually knew about the plaintiff's condition, not whether a reasonable official should have known. Compare *Brownell*, 950 F.2d at 1291 (applying a subjective standard in the Fourteenth Amendment context) with *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970 (applying a subjective standard in the Eighth Amendment context).

*Qian v. Kautz*, 168 F.3d 949, 955-56 (7th Cir. 1999).

Applying these standards to the allegations in the complaint, the Court is unable to dismiss this due process claim against Vaughn, Doe #3, Doe#5 and Doe #6 at this time.

**PENDING MOTIONS**

Sydner requests that the Court appoint him counsel (Doc. 3). There is no absolute right to appointment of counsel in a civil case. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ... plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d647, 854-55 (7th Cir. 2007). With regard to the first step of the inquiry, Sydner states that he "contacted Land of Lincoln Legal Assistance Foundation with no response." A single effort hardly constitutes a reasonable attempt.

Moreover, with regard to the second step of the inquiry,"the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id*. Sydner's claims are not that factually complex, as set forth above. From a legal standpoint, the litigation of any constitutional claim falls in the

range of complex. Nevertheless, based on the pleadings in this case, this Court concludes that, at this time, Sydner appears to be competent to litigate his case. Therefore, his motion for appointment of counsel is **DENIED**, without prejudice.

Finally, Sydner has filed a motion to expedite this matter (Doc. 6). This motion is now **MOOT**.

<u>Disposition</u>

**IT IS HEREBY ORDERED** that **COUNT 2** is **DISMISSED** from this action with prejudice. Because no claims remain pending against them, Defendants **BURNS** and **DOE #1** are **DISMISSED** from this action with prejudice. Plaintiff is advised that the dismissal of these counts against these defendants will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **MARKS** and **VAUGHN**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **MARKS** and **VAUGHN** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. Service shall not be made on the Unknown Defendants (John Does #2, #3, #4, #5 and #6) until such time as Plaintiff has

identified them by name on a USM-285 form and in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to former employees of Jackson County Jail who no longer can be found at the work address provided by Plaintiff, the County shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from Jackson County pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that Plaintiff immediately notify the court of any change in his mailing address and telephone number. Failure to notify the court of any change in the mailing address will result in dismissal of this lawsuit, with prejudice.

**IT IS SO ORDERED.**

**DATED this 28th day of August, 2009.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**